**TROUTMAN SANDERS LLP**
875 Third Avenue
New York, NY 10022
Telephone: 212-704-6227
Facsimile: 212-704-6288
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BITACH, LLC<br><br>             Plaintiff,<br><br>      v.<br><br>YEB EDUCATIONAL PROGRAMS INC.<br>and FRIENDS OF SHAAREI<br>MEVASERET, INC.<br><br>             Defendants. | CIVIL ACTION NO:<br>HON:<br><br><br>**NOTICE OF REMOVAL**<br>**Document Electronically Filed** |

**TO:**   CHIEF JUDGE AND JUDGES OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**ON NOTICE TO:**

Deputy Clerk, Superior Court of New Jersey
50 West Market Street
Newark, NJ 07102

Michelle M. Smith
Clerk of the Superior Court of New Jersey
Hughes Justice Complex
25 West Market Street
Trenton, NJ 08625

Samuel Cahn, Esq.
13 Avon Road
Springfield, NJ 07081
(862) 801-2246

PLEASE TAKE NOTICE that Defendants YEB Educational Programs Inc. ("YEB") and Friends of Sharei Mevaseret, Inc. a/k/a American Friends of Sharei Mevaseret Inc. ("AFSM" together with YEB, "Defendants") by their attorneys Troutman Sanders LLP, hereby remove this civil action, pending in the Law Division of the Superior Court of New Jersey, Essex County, Docket No. ESX-L-8401-15, to the United States District Court for the  District of New Jersey, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Removal is proper based on the following grounds:

1.      This action is a civil action within the meaning of the Acts of Congress relating to the removal of cases.

2.      Bitach, Inc. ("Plaintiff") initiated this action in the Superior Court of the State of New Jersey, Law Division, Essex County, on or about December 10, 2015, with the filing of a complaint, Index No. L8401-15, seeking monetary relief arising from certain dealings between Plaintiff and Defendants (the "Complaint").  See Complaint attached hereto as Exhibit A.

3.      Defendants were served with the Complaint on December 10, 2015.

**A.      Complete Diversity Exists Between The Parties.**

4.      At the time of the commencement of this action, Plaintiff was a Delaware limited liability company, with its principal place of business in Lawrenceville, Georgia. (Compl. ¶ 3). Accordingly, for diversity purposes, Plaintiff is a citizen of Georgia.

5.      At the time of the commencement of this action, YEB was, and still is, a not-for-profit corporation organized under the laws of the State of New Jersey, with its principal place of business in New Jersey.  (Compl. ¶ 4).

6.      At the time of the commencement of this action, AFSM was, and still is, a not-for-profit-corporation organized under the laws of the State of New York, with its principal place of business in New Jersey.  (Compl. ¶ 5).

7.      Based on the foregoing, complete diversity of citizenship exists.

**B.      The Amount In Controversy Is Satisfied In This Case.**

8.      The Complaint seeks damages against Defendants for amounts in excess of $124,950.64.  (Compl. ¶ 29, 36).

9.      Based on the foregoing, the amount in controversy exceeds the jurisdictional amount required by 28 U.S.C. § 1332.

**C.      The Removal Is Timely, And The Prerequisites For Removal Have Been Met.**

10.      This Notice of Removal is filed within thirty (30) days after receipt by Defendants of service of the Complaint and is therefore timely filed under 28 U.S.C. § 1446(b).

11.      Because complete diversity exists between Plaintiff and Defendants, and because the amount in controversy exceeds the jurisdictional amount required by 28 U.S.C. § 1332, this Court is vested with subject matter jurisdiction over this action and the case is properly removable under 28 U.S.C. § 1441(b).

12.      Defendants have not previously sought similar relief in this case.

13.      The prerequisites for removal under 28 U.S.C. §§ 1441 and 1446 have been met.

14.      Pursuant to 28 U.S.C. § 1446(a), Defendants have attached a copy of the Complaint served and filed by Plaintiff in the Superior Court of New Jersey, Law Division, Essex County.  See Exhibit A.

15.      Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action has been given simultaneously to Plaintiff's counsel, and a Notice of Filing of Notice of Removal is

simultaneously being filed with the Superior Court of New Jersey, Law Division, Essex County. See Exhibit B).

16.     Defendants reserve the right to amend this Notice of Removal and/or oppose any amendment of the Complaint that would add any non-diverse defendant(s) or change the amount in controversy, thereby attempting to destroy this Court's diversity jurisdiction.

17.     By filing this Notice of Removal, Defendants do not waive any defenses, including without limitation, lack of personal jurisdiction, improper venue or forum, all defenses specified in Fed. R. Civ. P. 12, or any other defense.

WHEREFORE, Defendants prays this Court will remove this action from the Superior Court of New Jersey, Law Division, Essex County, and requests that further proceedings be conducted in this Court as provided by law.


Dated: New York, New York
      January 8, 2016

**TROUTMAN SANDERS LLP**

By: _Aurora Cassirer_

Aurora Cassirer
Amanda Lyn Genovese
875 Third Avenue
New York, NY 10022
Phone:  (212) 704-6000
Fax:      (212) 704-6288

*Attorneys for Defendants*

# EXHIBIT A

**SUMMONS**

| | |
|---|---|
| Attorney(s) | Samuel Cahn |
| Office Address | 13 Avon Road |

Town, State, Zip Code  Springfield, NJ 07081

Telephone Number   (862) 801-2246

Attorney(s) for Plaintiff

Bitach, LLC

Plaintiff(s)

Vs.

YEB Educational Programs Inc., and Friends of Shaarei

Mevaseret, Inc.,  aka American Friends of Shaarei Mevaseret Inc

Defendant(s)

**Superior Court of New Jersey**

| Essex | COUNTY |
|---|---|
| Law | DIVISION |

Docket No: ESX-L-8401-15

**CIVIL ACTION SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/s/ Michelle M Smith

Clerk of the Superior Court

DATED:  12/10/15

Name of Defendant to Be Served:   Friends of Shaarei Mevaseret, Inc. c/o Treetop Development

Address of Defendant to Be Served:   500 Frank W Burr Blvd, Suite 47, Teaneck, NJ 07666

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

Samuel Cahn
Attorney ID Number 035072005
13 Avon Road
Springfield, NJ 07081
Telephone: (862) 801-2246

| |
|---|

Superior Court of New Jersey

Bitach, LLC

Law Division, Essex County

                    Plaintiff,

Part: L 8401-15

          v.

Docket No:

YEB Educational Programs Inc., and

Friends of Shaarei Mevaseret, Inc.

a.k.a. American Friends of Sharei Mevaseret, Inc.

Civil Action

a.k.a. Friends Shaare Mevaseret Inc.,

**Complaint**

                    Defendants

Plaintiff Bitach, LLC ("Plaintiff" or "Bitach"), a Delaware limited liability company, by its attorney, as and for its complaint against defendants YEB Educational Programs Inc. ("YEB") and Friends of Shaarei Mevaseret, Inc. a.k.a. American Friends of Sharei Mevaseret, Inc. a.k.a. Friends Shaare Mevaseret Inc. ("AFSM," and together with YEB, the "Defendants") alleges upon knowledge with respect to its own actions and upon information and belief as to all other matters as follows:

## NATURE OF ACTION AND REQUESTED RELIEF

1.      This is an action by Plaintiff against Defendants arising from Defendants' breach and default of their obligations under that certain Revolving Credit Agreement, dated January 1, 2015 (the "Credit Agreement"); certain Revolving Note, dated January 1, 2015 (the "Note"); and

1

certain Guaranty of Payment and Performance, entered into on or about January 1, 2015 (the "Guaranty"), collectively in favor of Plaintiff Bitach. The Credit Agreement, Note and Guaranty are sometimes collectively referred to herein as the "Contracts." A copy of the Credit Agreement is attached hereto as Exhibit A, a copy of the Note is attached hereto as Exhibit B, and a copy of the Guaranty is attached hereto as Exhibit C.

2.      Plaintiff seeks judgment for the unpaid principal balance due, plus fees with respect thereto, and interest and charges at the default rate, all as set forth in the Contracts, and for costs, including attorneys' fees, and a judgment directing Defendant AFSM to honor its commitments under the Guaranty.

## THE PARTIES

3.      Plaintiff is a Delaware limited liability company with a place of business at 3545 Cruse Road, Lawrenceville, Georgia 30044.

4.      Upon information and belief, Defendant YEB is a not for profit corporation organized under the laws of the State of New Jersey. It variously uses offices in Essex County and in Bergen County, including (i) 550 Broad Street, Suite 1212 Newark, New Jersey 07012, and (ii) 500 Frank W. Burr Boulevard, Suite 47, Teaneck, New Jersey 07666.

5.      Upon information and belief, Defendant AFSM is a New York not for profit corporation actively conducting business in New Jersey. It maintains an office at 500 Frank W. Burr Boulevard, Teaneck, New Jersey.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this dispute and over the Defendants, as Defendant YEB is a corporation organized under New Jersey law and Defendant AFSM regularly conducts business in New Jersey.

2

7.      Venue is appropriate in this County under Rule 4:3-2(a) and (b), as Defendant YEB is a corporation which maintains an office within this County.

## FACTUAL BACKGROUND

8.      Upon information and belief, Defendants are the fundraising and financing affiliates of Yeshivat Shaare Mevaseret Zion ("YSMZ"), an Israeli seminary with a student body comprised largely of Americans studying for a gap year prior to entering colleges in the U.S.

9.      Upon information and belief, Defendants collect tuition from YSMZ's American students and solicit charitable donations to further YSMZ's operations. Defendants then forward those funds to YSMZ to support its programming.

10.     To help manage expenses, Defendant YEB sought a revolving line of credit from Bitach.

11.     In January 2015, Bitach agreed to provide Defendant YEB with a revolving line of credit allowing for concurrent periodic borrowings of up to $100,000 at any one time, on condition that Defendant YEB enter into the Credit Agreement and the Note, and on condition that Defendant AFSM, non-party YSMZ, and YSMZ's non-party principal ("Yedidia") guaranty YEB's debt by entering into the Guaranty.

12.     The Note provides in relevant part that "The Principal and Fees thereon shall be paid in full by Borrower to Lender no later than 7 Business Days after the Advance Date (the "Due Date")." Note §2.1.

13.     The Note further provides that if any amounts due under the Note or the Credit Agreement are "not received by Lender within three (3) Business Days of the Due Date, or such other applicable due date, then Borrower shall pay to Lender a late charge equal to fifteen percent (15%) of the amount of such payment not timely made." Note §3.1.

3

14.     Additionally, the Note provides that in the event of default, "Borrower shall pay to Lender a default rate of interest with respect to any outstanding Obligations of 1.5% per month, or at the highest rate permitted by law, whichever rate is lower." Note §3.2.

15.     The Credit agreement elaborates on events which may cause a default, which include failure to pay any amount when due and the commencement of bankruptcy, receivership, or insolvency proceedings relating to any borrower or guarantor. Upon the occurrence of an event of default, the Credit Agreement provides Bitach with the right to accelerate all amounts outstanding. Credit Agreement §IV.

16.     From January through early September, Defendant YEB regularly drew on the line of credit, generally repaying its obligations as required by the terms of the Note.

17.     During September, Yedidia approached Bitach seeking to borrow larger sums. Bitach agreed, and made the following advances to YEB:

|      |                    |             |
|------|--------------------|-------------|
| i.   | September 18, 2015 | $35,101.31  |
| ii.  | September 22, 2015 | $34,800.00  |
| iii. | September 25, 2015 | $35,000.00  |
| iv.  | September 27, 2015 | $25,010.18  |

In total, Bitach advanced $129,911.49 to Defendant YEB during this period. See Plaintiff's record of advances, attached hereto as Exhibit D. Defendant YEB agreed in the Credit Agreement that Bitach's records shall constitute prima facie evidence of all amounts due under the Contracts. Credit Agreement §1.7.

18.     Since the abovementioned September borrowings, YEB has repaid only approximately $4,961 of its borrowings, leaving $124,950.64 of Principal outstanding, in

4

addition to accrued fees, charges, and interest. YEB's failure to repay its borrowings within seven business days renders YEB in default under the Note and the Credit Agreement.

19.     Throughout the month of October, Bitach sought repayment from YEB. Eventually, on October 20, 2015, Bitach secured a meeting with Defendants' representative, Yehuda Berzon (upon information and belief, Yedidia's brother), who informed Bitach that Defendants and YSMZ were experiencing financial difficulties, and that Defendants and YSMZ were trying to work through such difficulties. Bitach demanded prompt repayment from Defendants' representative, and sought a payment schedule.

20.     Since the October 20 meeting, Bitach has repeatedly sought to contact Defendants, without receiving any response.

21.     On November 2 and on November 6, Bitach sent formal notices to Defendant YEB reiterating its default and outstanding obligations under the Note and the Credit Agreement, and to Defendant AFSM, YSMZ, and Yedidia informing them of their obligations under the Guaranty. See certain notices attached hereto as Exhibit E. To date, Bitach has not received any response.

## RULE 4:5-1(b)(2) NOTICE OF PENDING ACTIONS

22.     Upon information and belief, non-party guarantor YSMZ has sought bankruptcy protection in Israel. This alone renders Defendant YEB in default under the Credit Agreement, and Defendant AFSM in default under the Guaranty. Credit Agreement §IV(c); Guaranty §3.

23.     Plaintiff has, or soon will, commence arbitration and/or litigation in Israel against non-party guarantors YSMZ and Yedidia.

24.     Defendant YEB agreed in the Note that "time is of the essence hereof." Note §2.2. Therefore, Plaintiff deems the relief sought in this suit to be in the nature of emergency relief necessary to protect its rights against Defendants.

25.     Due to non-party guarantor YSMZ's declared insolvency, to Defendants ongoing and consistent avoidance of Plaintiff's communications, and to the intertwined nature of the Defendants' and the insolvent non-party guarantor's businesses, Plaintiff deems that emergency relief is necessary to protect its right to repayment under the Credit Agreement, the Note, and the Guaranty.

26.     Pursuant to the terms of the Guaranty, Defendant AFSM and the other guarantors are jointly and severally obligated to pay any amounts on which Defendant YEB has defaulted. Guaranty §1.

27.     Therefore, Plaintiff is initiating suit in this Court to exercise its rights to repayment under the Guaranty, as upon information and belief Defendants and their assets are primarily located in, or controlled from, New Jersey.

## FIRST CAUSE OF ACTION

### Breach of Contract

### Against Defendant YEB

28.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 as if set forth at length herein.

29.     Plaintiff has made loans to the Defendant YEB, no later than September 27, 2015, and such loans remain outstanding in the principal amount of $124,950.64.

30.     Pursuant to the terms of the Note, all such loans were due no later than seven business days later, or October 6, 2015.

31.     Defendant YEB defaulted under the Note by failing to pay the principal and accrued fees and interest upon such loans in full by October 6, 2015.

32.     Upon information and belief, non-party guarantor YSMZ has sought bankruptcy protection, causing an additional default in Defendant YEB's obligations under the Credit Agreement.

33.     Plaintiff has repeatedly demanded that Defendant YEB pay the amounts due under the Note in full, which demand was refused or ignored.

34.     As a direct and proximate result of Defendant YEB's default and failure to repay the loans, interest, and fees, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant YEB for compensatory damages for the amounts set forth in the Contracts, and consequential damages, plus interest and costs of suit, attorneys' fees, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Breach of Contract

### Against Defendant AFSM

35.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if set forth at length herein.

36.     Plaintiff has made loans to the Defendant YEB, no later than September 27, 2015, and such loans remain outstanding in the principal amount of $124,950.64.

37.     Pursuant to the terms of the Note, all such loans were due no later than seven business days later, or October 6, 2015.

38.     Defendant YEB defaulted under the Note by failing to pay the principal and accrued fees and interest upon such loans in full by October 6, 2015.

39.   Defendant AFSM is therefore obligated under the Guaranty to compensate Plaintiff for all payments owed by Defendant YEB. Guaranty §1.

40.   Plaintiff has informed Defendant AFSM of its obligations under the Guaranty, but Defendant AFSM has failed to perform such obligations.

41.   Therefore, Defendant AFSM is in default under the Guaranty. Guaranty §3.

42.   As a direct and proximate result of Defendant AFSM's default and failure to repay its obligations under the Guaranty, Plaintiff has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant AFSM for compensatory damages for the amounts set forth in the Contracts, and consequential damages, plus interest and costs of suit, attorneys' fees and such other relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION

### <u>Attorneys' Fees and Costs</u>

### Against Both Defendants

43.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 as if set forth at length herein.

44.   Pursuant to the Credit Agreement and the Guaranty, Defendants are jointly and severally liable for all costs and expenses, including attorneys' fees, incurred or suffered by the Plaintiff as a result of the Defendant YEB's default in payment and arising from the cost of collection.

45.   Defendant YEB has defaulted under and breached the Note and the Credit Agreement.

46.     Plaintiff has incurred costs and expenses, including attorneys' fees in an amount to be proven at trial as a result of Defendant YEB's default in payment under the Note and the Credit Agreement.

47.     As a direct and proximate result of Defendant YEB's defaults under the Note and the Credit Agreement, as well as its breaches of said agreements, Plaintiff has incurred attorneys' fees, costs and expenses and thus suffered damages in an amount to be proven at trial.

48.     As set forth explicitly in the Contracts, Defendants are jointly and severally liable for all costs and expenses, including attorneys' fees, incurred or suffered by the Plaintiff as a result of the Defendant YEB's default in payment and arising from the cost of collection.

WHEREFORE, the Plaintiff demands judgment jointly and severally against the Defendants for attorneys' fees, costs and expenses and such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Attorneys' Fees and Costs

### Against Defendant AFSM

49.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 as if set forth at length herein.

50.     Pursuant to the Guaranty, Defendant AFSM is jointly and severally liable, together with the non-party guarantors, for all costs and expenses, including attorneys' fees, incurred or suffered by the Plaintiff as a result of Defendant AFSM's default in payment and arising from the cost of collection.

51.    Defendant AFSM has failed to make payments due under the Guaranty within three days of such payments coming due, therefore putting it into default under, and causing it to breach, the Guaranty.

52.    Plaintiff has incurred costs and expenses, including attorneys' fees in an amount to be proven at trial as a result of Defendant AFSM's default in payment under the Guaranty.

53.    As a direct and proximate result of Defendant AFSM's defaults under the Guaranty as well as its breaches of said agreement, Plaintiff has incurred attorneys' fees, costs and expenses and thus suffered damages in an amount to be proven at trial.


WHEREFORE, the Plaintiff demands judgment against the Defendant AFSM for attorneys' fees, costs and expenses and such other relief as the Court deems just and proper.


Dated:        Springfield, New Jersey

              November 27, 2015

                                                    _____
                                                    Samuel Cahn

                                                    *Attorney for Plaintiff Bitach, LLC*

10

**Exhibit A**

**Credit Agreement**

REVOLVING CREDIT AGREEMENT

THIS REVOLVING CREDIT AGREEMENT (the "Agreement"), dated as of January _1_, 2015, is entered into between YEB EDUCATIONAL PROGRAMS INC., a _____ 501(c)(3) non-profit corporation with an address at _____, and an email address of _____ (the "Borrower"), and BITACH, LLC, a Delaware limited liability company with an address at 3545 Cruse Road, Lawrenceville, Georgia 30044, and an email address of _____ (the "Lender").

WHEREAS, Borrower has requested that Lender make available to Borrower a revolving credit facility (the "**Revolving Facility**") in a maximum aggregate principal amount at any time outstanding of up to One Hundred Thousand Dollars (the "**Maximum Revolving Loan Amount**"), and Lender is willing to make the Revolving Facility available to Borrower upon the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and adequacy of which hereby are acknowledged, Borrower and Lender hereby agree as follows:

## I.   ADVANCES, PAYMENT AND FEES

### 1.1   The Revolving Facility; Advances

Subject to the terms and conditions set forth in this Agreement, Lender shall make advances to Borrower under the Revolving Facility ("**Advances**") from time to time during the period commencing on the date hereinabove set forth and concluding on January ___, 2016 or such other date as mutually agreed to between the parties (the "**Term**"); provided that the aggregate amount of all Advances at any one time outstanding under the Revolving Facility shall not exceed the Maximum Revolving Loan Amount. The Revolving Facility is a revolving credit facility, which may be drawn, repaid and redrawn, from time to time as permitted under this Agreement. For purposes of this Agreement, any determination as to whether there is availability for Advances or extensions of credit shall be made by Lender in its sole discretion and is final and binding upon Borrower. Except as otherwise specified, any amounts paid by Lender on behalf of Borrower or the Guarantors (defined below) during the Term shall be an "Advance" for purposes of the Agreement. Except as otherwise permitted by Lender from time to time, each Advance shall be in an amount of at least $1,000.

### 1.2   The Revolving Note; Guaranty

(a)   All Advances under the Revolving Facility shall be evidenced by a Revolving Note in the form attached hereto as Exhibit A, payable to the order of Lender, duly executed and delivered by Borrower, evidencing the aggregate indebtedness of Borrower to Lender resulting from Advances under the Revolving Facility, from time to time.

(b)     All Obligations shall be due and payable in full on the earlier of (i) the date(s) set forth in the Revolving Note(s), and (ii) the last day of the Term (such earlier date being the "**Maturity Date**"). As used herein, the term "**Obligations**" shall mean any and all debts (whether principal, Fees (defined in Section 1.3 below) or interest), liabilities and obligations of Borrower to Lender arising under the Loan Documents (defined in subsection (c) below), including, without limitation, all fees, charges, penalties, costs and expenses (including reasonable attorneys' fees) that may be incurred in the protection of and/or enforcement of any or all of the rights and remedies of Lender thereunder.

(c)     The Revolving Note(s) and the obligations of Borrower to Lender set forth herein are guaranteed by a certain Guaranty of Payment and Performance, dated the date hereof (the "**Guaranty**"), from Yedidia Berzon, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret, Inc. (the "**Guarantors**"). This Agreement, the Revolving Notes, the Guaranty and the Heter Iska are collectively referred to herein as the "**Loan Documents**."

**1.3     Fees**

Fees accrued on each Advance under a Revolving Note (the "**Fees**") shall be due and payable in the amounts, on the dates and in accordance with the procedures set forth herein and in such Revolving Note.

**1.4     Revolving Facility Disbursements**

So long as no Event of Default (defined in Section 4 below) shall have occurred and be continuing, Borrower may give Lender irrevocable written notice requesting an Advance under the Revolving Facility, which shall specify (i) the proposed borrowing date of such requested Advance (the "**Borrowing Date**"), which shall be a Business Day, and (ii) the principal amount of such requested Advance. A "Business Day" shall mean any day other than a Saturday, Sunday or other day on which banking institutions in New York or Israel are authorized or required by law to close. On each Borrowing Date, Borrower irrevocably authorizes Lender to disburse the proceeds of the requested Advance to such account as to which Borrower shall instruct Lender.

**1.5     Repayment**

Any payments by Borrower to Lender shall be applied as follows: first, to costs and expenses due and owing under the Loan Documents, second, to Fees and interest due and owing under the Loan Documents, and third, to principal outstanding with respect to the Revolving Facility.

**1.6     Manner of Payment**

Any payments made by Borrower (other than payments automatically paid through Advances under the Revolving Facility as provided herein), shall be made only by wire transfer on the date when due, without offset or counterclaim, in Dollars, in immediately available funds to such account as may be indicated in writing by Lender to Borrower from time to time. Any such payment received after 2:00 p.m. Eastern Standard Time on the date when due shall be deemed received on the

following Business Day.  Whenever any payment hereunder shall be stated to be due or shall become due and payable on a day other than a Business Day, the due date thereof shall be extended to, and such payment shall be made on, the next succeeding Business Day.

**1.7     Lender Records**

The records of Lender with respect to amounts outstanding under the Revolving Notes shall be *prima facie* evidence of the amounts of all Advances, Fees and payments and other charges applicable thereto.

**1.8     Additional Payments**

Any sums expended by Lender as a result of Borrower's or Guarantors' failure to pay, perform or comply with the Obligations may be charged to Borrower's account as an Advance under the Revolving Facility and added to the Obligations.

**1.9     Lawful Limits**

In no contingency or event whatsoever, whether by reason of acceleration or otherwise, shall any interest, fees and other charges paid or agreed to be paid to Lender for the use, forbearance or detention of money hereunder exceed the maximum rate permissible under applicable law which a court or arbitrator(s) of competent jurisdiction shall, in a final determination, deem applicable hereto. If, due to any circumstance whatsoever, fulfillment of any provision hereof, at the time performance of such provision shall be due, shall exceed any such limit, then, the obligation to be so fulfilled shall be reduced to such lawful limit, and, if Lender shall have received interest, fees or any other charges of any kind which might be deemed to be interest under applicable law in excess of the maximum lawful rate, then such excess shall be applied first to any unpaid fees and charges hereunder, then to the unpaid principal balance owed by Borrower hereunder, and if the then remaining excess interest is greater than the previously unpaid principal balance, Lender shall promptly refund such excess amount to Borrower and the provisions hereof shall be deemed amended to provide for such permissible rate.  The terms and provisions of this Section 1.9 shall control to the extent any other provision of any Loan Document is inconsistent herewith.

**1.10     Late Fee; Default Rate of Interest**

(a)     Notwithstanding any other provision of this Agreement or any Loan Document, if any payment, interest, Obligation, Fee, charge or other amount due hereunder or other payment due under any other Loan Document is not received by Lender within three (3) Business Days of the day such payment is due and payable, then Borrower shall pay to Lender a late charge equal to fifteen percent (15%) of the amount of such payment not timely made.

(b)     Without in any way limiting the provisions of Section 1.10(a) above, upon the occurrence of an Event of Default and during the continuation thereof, Borrower shall pay to Lender a

3

default rate of interest with respect to any outstanding Obligations of 1.5% per month or at the highest rate permitted by law, whichever rate is lower.

## II.    REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants as of the date hereof and as of each Borrowing Date as follows: (i) Borrower is duly organized, validly existing, and in good standing under the laws of the State of New York; (ii) Borrower and each Guarantor has all requisite power and authority to execute, deliver and perform the Loan Documents to which it is a party; (iii) the execution, delivery and performance of this Agreement and each document incident hereto will not violate any provision of any applicable law, agreement or other undertaking to which Borrower is a party, or which purports to be binding on Borrower or its assets, and will not result in the creation or imposition of a lien on any of its assets; and (iv) there is no action, suit, investigation, or proceeding pending or, to the knowledge of Borrower, threatened, against or affecting Borrower or any of its assets which, if adversely determined, would have a Material Adverse Affect. For purposes hereof, "**Material Adverse Effect**" shall mean any event, condition or circumstance which (a) has had or could reasonably be expected to have or result in any material adverse effect whatsoever upon, or in the validity or enforceability of, any Loan Document, (b) has been or could reasonably be expected to be material and adverse to the condition (financial or otherwise) of Borrower or any Guarantor, or (c) has materially impaired or could reasonably be expected to materially impair the ability of Borrower or any Guarantor to perform the Obligations or to consummate the transactions under the Loan Documents.

## III.   COVENANTS

Borrower covenants and agrees that, until full performance and satisfaction, and indefeasible payment in full in cash, of all the Obligations and termination of this Agreement: (i) Borrower shall promptly, and in any event within three (3) calendar days after Borrower obtains knowledge thereof, notify Lender in writing of any development, event, fact, circumstance or condition that could reasonably be expected to have or result in a Material Adverse Effect or that could result in an Event of Default, in each case describing the nature and status thereof and the action Borrower proposes to take with respect thereto; (ii) Borrower shall make full and timely indefeasible payment in cash of the principal of and Fees on the Advances and all other Obligations; (iii) at Borrower's cost and expense, Borrower shall, and shall cause each Guarantor to, promptly, but in no event later than five (5) Business Days after Lender's demand therefor, take such further actions, obtain such consents and approvals and duly execute and deliver such further agreements, assignments, instructions or documents as Lender may request relating to the performance of the Obligations under the Loan Documents, to effect fully the purposes, terms and conditions of the Loan Documents and the consummation of the transactions contemplated hereby and thereby; and (iv) Borrower shall use the proceeds from the Revolving Facility solely for working capital needs in connection with its operation of a yeshiva.

IV.   **EVENTS OF DEFAULT**

The occurrence of any one or more of the following shall constitute an "Event of Default:"

(a)   Borrower shall fail to pay any Obligations, including but not limited to any principal of or Fee on any Revolving Note, when due;

(b)   any representation, warranty or covenant made or deemed made by Borrower or any Guarantor in any Loan Document shall not be true and correct in all material respects or shall have been false or misleading in any material respect on the date when made or deemed to have been made;

(c)   Borrower or any Guarantor shall fail to pay, or admit in writing his or its inability to pay, his or its debts as they mature or become due and payable, or shall make any assignment for the benefit of creditors; or there shall be commenced any bankruptcy, receivership, insolvency, reorganization, dissolution or liquidation proceedings by or against any of them (and with respect to an involuntary bankruptcy petition, the same is not vacated or dismissed within thirty (30) days), or the entry of any judgment, levy, attachment or garnishment or other process, or the filing of any lien against any of them; or

(d)   any Material Adverse Effect shall occur or shall be reasonably expected to occur, or Borrower ceases any portion of its non-profit business operations as currently conducted;

then, and in any such event, notwithstanding any other provision of this Agreement or any of the Loan Documents, Lender may, by notice to Borrower, declare all or any of the Revolving Notes, all Fees thereon and all other Obligations under the Loan Documents to be due and payable immediately (except in the case of an Event of Default under Section 4(c), in which event the Revolving Notes, all Fees thereon and all such other Obligations shall automatically and without further act by Lender be due and payable). Without in any way limiting the foregoing, upon the occurrence and continuation of an Event of Default, Lender shall have the right to exercise any and all other rights, options and remedies provided for herein or in any of the Loan Documents, or at law or in equity generally or otherwise.

V.   **WAIVERS**

Borrower hereby waives demand, presentment, protest, notice of dishonor or non-payment, as well as all defenses with respect to any and all instruments; and all other demands and notices of any description, except such as are expressly provided for herein. No course of dealing between the parties, or delay, failure or omission on Lender's part in enforcing this Agreement or any other Loan Document or in exercising or enforcing any right, remedy, option or power hereunder or thereunder shall affect the liability of Borrower or any Guarantor or operate as a waiver of such or any other right, remedy, power or option or of any default, nor shall any single or partial exercise of any right, remedy, option or power hereunder or under any other Loan Document affect the liability of

Borrower or any Guarantor or preclude any other or further exercise of such or any other right, remedy, power or option.  No waiver by any party to this Agreement of any one or more defaults by the other party in the performance of any of the provisions of this Agreement or any other Loan Document shall operate or be construed as a waiver of any future default, whether of a like or different nature.  Any waiver of this Agreement by Lender shall be limited solely to the express terms and provisions of such waiver.

## VI.   TERMINATION

Notwithstanding any other provision of this Agreement or any Loan Document, the termination of this Agreement shall not affect Lender's rights or any of the Obligations existing as of the effective date of such termination (the "Termination Date"), and the provisions of the Loan Documents shall continue to be fully operative until the Obligations thereunder have been fully performed and indefeasibly paid in cash in full.  It is the express intention and agreement of the parties hereto that all undertakings, obligations, covenants, agreements, representations, warranties and indemnities made by Borrower herein or in any other Loan Document shall survive the execution and delivery of this Agreement, and the making of Advances under the Revolving Facility and any termination of this Agreement.

## VII.   MISCELLANEOUS

### 7.1   Governing Law; Arbitration; Consent to Jurisdiction

TO INDUCE LENDER TO MAKE THE ADVANCES, BORROWER AGREES THAT ALL ACTIONS ARISING DIRECTLY OR INDIRECTLY AS A RESULT OR IN CONSEQUENCE OF THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT WITH LENDER SHALL BE SETTLED BY ARBITRATION BY AN ORTHODOX RABBINICAL COURT SELECTED BY BORROWER AND LENDER IN JERUSALEM, ISRAEL (THE "BET DIN"), IN ACCORDANCE WITH THE RULES SET FORTH BY THE BET DIN.  SUCH DECISION SHALL BE FINAL AND BINDING UPON THE PARTIES HERETO.  BORROWER HEREBY AGREES TO THE SELECTION OF THE BET DIN OF RABBI MOSHE URI EISENSTEIN IN GIVAT SHAUL, JERUSALEM.  IF RABBI EISENSTEIN OR HIS BET DIN IS NOT WILLING AND AVAILABLE TO SERVE AS SUCH, THEN THE PARTIES HEREBY AGREE THAT BORROWER, ON THE ONE HAND, WILL SELECT ONE RABBI ("BORROWER'S RABBI") AND LENDER, ON THE OTHER HAND, WILL SELECT ANOTHER RABBI ("LENDER'S RABBI") AND BORROWER'S RABBI AND LENDER'S RABBI WILL SELECT A THIRD RABBI, AND ALL SUCH RABBIS WILL SERVE JOINTLY AS THE ARBITRATORS.  BORROWER HEREBY CONSENTS TO THE JURISDICTION OF THE COURTS IN JERUSALEM, ISRAEL, FOR ALL PURPOSES IN CONNECTION WITH ARBITRATION, INCLUDING THE ENTRY OF JUDGMENT ON ANY AWARD (AND SUCH JUDGMENT MAY BE ENTERED IN ANY OTHER COURT HAVING COMPETENT JURISDICTION THEREOF).  THE ARBITRATOR(S) SHALL HAVE NO POWER TO ALTER OR MODIFY ANY EXPRESS PROVISION OF THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR TO RENDER AN AWARD WHICH HAS THE EFFECT OF ALTERING OR MODIFYING ANY EXPRESS PROVISION HEREOF OR THEREOF.  BORROWER HEREBY WAIVES ANY OBJECTION BASED ON FORUM NONCONVENIENS, AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS, AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY HAND, OR BY COURIER OR BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE UNDERSIGNED AT THE ADDRESS HEREINABOVE SET FORTH.  IN THE EVENT THAT LENDER DEEMS EMERGENCY RELIEF NECESSARY, IT

MAY APPLY TO ANY COURT OF COMPETENT JURISDICTION FOR SUCH RELIEF WITHOUT WAIVER OF THE FOREGOING ARBITRATION PROVISION.

7.2     Successors and Assigns

This Agreement shall inure to the benefit of Lender and each of its successors and permitted assigns. Borrower may not assign, delegate or transfer this Agreement or any of its rights or obligations under this Agreement or any Loan Document without the prior written consent of Lender. No rights are intended to be created under this Agreement or under any other Loan Document for the benefit of any third party donee, creditor or incidental beneficiary of Borrower or any Guarantor. This Agreement shall be binding upon Borrower and its successors and assigns. BORROWER ACKNOWLEDGES THAT LENDER AT ANY TIME AND FROM TIME TO TIME MAY SELL, ASSIGN OR TRANSFER ALL OR ANY PART OF ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT, ANY REVOLVING NOTE, THE OBLIGATIONS, AND/OR THE OTHER LOAN DOCUMENTS TO OTHER PERSONS. (As used herein, "Person" shall mean an individual, a partnership, a corporation, a limited liability company, a governmental authority or any other entity of whatever nature.)

7.3     Indemnity

Borrower shall indemnify Lender and its managers, members, officers, employees, affiliates, agents, representatives, successors, assigns, accountants and attorneys (collectively, the "Indemnified Persons") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of any kind or nature whatsoever, including, without limitation, reasonable attorneys' fees and disbursements which may be imposed on, incurred by or asserted against Lender or any other Indemnified Person with respect to or arising out of, or in any litigation, proceeding or investigation instituted or conducted by any Person with respect to any matter related to this Agreement or any of the Loan Documents or any agreement or document contemplated hereby or thereby, except to the extent that any of the foregoing arises out of the gross negligence or willful misconduct of Lender or such Indemnified Person.

7.4     Notice

All notices, consents, requests, demands and other communications hereunder shall be in writing and shall be deemed duly given to any party (i) upon delivery to the address of the party as hereinabove set forth if delivered in person or by courier, or (ii) five (5) Business Days after being sent to such address by certified or registered mail (return receipt requested), or (iii) in the case of delivery by electronic transmission to the email address hereinabove set forth, upon telephone or further electronic communication from the recipient acknowledging receipt (whether automatic or manual from recipient), as applicable (each, a "Receipt"). The parties hereto may designate such other address or email address by written notice in the aforesaid manner.

7.5     Severability

If any term or provision of this Agreement is adjudicated to be invalid under applicable laws or regulations, such provision shall be inapplicable to the extent of such invalidity without affecting the validity or enforceability of the remainder of this Agreement which shall be given effect so far as possible.

7.6     Expenses

Borrower shall pay all costs and expenses incurred by Lender, including, without limitation, reasonable attorneys' fees and expenses, (a) in any effort to enforce, protect or collect payment of any Obligation or to enforce any Loan Document, or effect collection hereunder or thereunder, (b) arising in any way out of administration of the Obligations, including without limitation, any wire transfer fees, or (c) in defending or prosecuting any actions, claims or proceedings arising out of or relating to Lender's transactions with Borrower.

7.7     Captions

The captions in this Agreement are intended for convenience and reference only and do not constitute and shall not be interpreted as part of this Agreement, and shall not affect the meaning or interpretation of this Agreement.

7.8     Counterparts; Facsimile or PDF Transmission

This Agreement may be executed in one or more counterparts, all of which taken together shall constitute but one and the same instrument. This Agreement may be executed by pdf or facsimile transmission, which pdf or facsimile signatures shall be considered original executed counterparts for purposes of this Section 7.8, and each party to this Agreement agrees that it will be bound by its own pdf or facsimile signature and that it accepts the pdf or facsimile signature of the other party to this Agreement.

7.9     Entire Agreement

This Agreement and the other Loan Documents constitute the entire agreement between Borrower and Lender with respect to the subject matter hereof and thereof, and supersede all prior agreements and understandings, if any, relating to the subject matter hereof or thereof. Any promises, representations, warranties or guarantees not herein contained and hereinafter made shall have no force and effect unless in writing, signed by Borrower and Lender. Neither this Agreement nor any portion or provisions hereof may be changed, modified, amended, restated, waived, supplemented, discharged, canceled or terminated orally or by any course of dealing or in any other manner other than by an agreement in writing signed by both Lender and Borrower. Each party to this Agreement acknowledges that it has been advised by counsel in connection with the negotiation and execution of this Agreement and other Loan Documents and is not relying upon oral representations or statements inconsistent with the terms and provisions of this Agreement.

8

### 7.10   Lender Approvals

Unless expressly provided herein to the contrary, any approval, consent, waiver or satisfaction of Lender with respect to any matter that is subject of this Agreement or the other Loan Documents may be granted or withheld by Lender in its sole and absolute discretion.

### 7.11   Confidentiality

Borrower agrees (i) to treat this Agreement and all other Loan Documents confidentially and not to transmit any copy hereof or thereof or disclose the contents hereof or thereof, in whole or in part, to any Person without Lender's prior written consent, other than to Borrower's advisors and officers on a need-to-know basis, (ii) that Borrower shall inform all such Persons who receive information concerning this Agreement or any of the Loan Documents of the confidential nature hereof and thereof and shall direct them to treat the same confidentially and not to disclose it to any other Person, and (iii) that each of them shall agree to be bound by these provisions.

### 7.12   Release of Lender

For and in consideration of each Advance hereunder, notwithstanding any other provision of this Agreement or any other Loan Document, Borrower voluntarily, knowingly, unconditionally and irrevocably, with specific and express intent, for and on behalf of itself and its managers, members, directors, officers, employees, shareholders, affiliates, agents, representatives, accountants, attorneys, successors and assigns (collectively, the "Releasing Parties") hereby does fully and completely release and forever discharge the Indemnified Parties, of and from any and all actions, causes of action, damages, claims, obligations, liabilities, costs, expenses and demands of any kind whatsoever, at law or in equity or otherwise, whether matured or unmatured, vested or contingent, that the Releasing Parties or any of them have against the Indemnified Parties or any of them at any time hereunder or under any Loan Document. Borrower acknowledges that the foregoing release is a material inducement to Lender's decision to extend to Borrower the financial accommodations hereunder and has been relied upon by Lender in agreeing to make each Advance hereunder.

IN WITNESS WHEREOF, each of the parties has duly executed this Revolving Credit Agreement as of the date first written above.

YEB EDUCATIONAL PROGRAMS INC.

By: _____
Yedidia Berzon, CEO

BITACH, LLC

By: _____
Ezra Zucker, CEO

**Exhibit B**

**Note**

REVOLVING NOTE

Principal Amount: U.S. $ 100,000                                      Dated: Jan 1st 2015

FOR VALUE RECEIVED, the undersigned, YEB EDUCATIONAL PROGRAMS INC., a
_____ 501(c)(3) non-profit corporation with an address at _____
("Borrower"), hereby promises to pay to BITACH, LLC, a Delaware limited liability company with
an office at 3545 Cruse Road, Lawrenceville, Georgia 30044, its successors and assigns
(hereinafter, together with any holder hereof, called "Lender"), the unpaid principal amount of
_____ ($ 100,000) (the "Principal"), with Fees thereon, and all other
Obligations as set forth herein and in the Revolving Credit Agreement, dated as of January
__, 2015, between Borrower and Lender (the "Credit Agreement"), all at the times and in the
manner set forth herein and in the Credit Agreement. Capitalized terms not defined herein shall
have the meanings set forth in the Credit Agreement.

1.      **Credit Agreement; Guaranty.**   This Revolving Note is referred to in, made
pursuant to, and entitled to the benefits of, and subject to the terms and conditions of, the
Credit Agreement. The Principal hereof constitutes one of the Advances under the Revolving
Facility referred to in the Credit Agreement. The Credit Agreement, among other things, (i)
provides for the making of the Revolving Facility by Lender to Borrower up to the Maximum
Revolving Loan Amount, and (ii) contains provisions defining an Event of Default and the rights
and remedies of Lender upon the occurrence of an Event of Default. This Revolving Note is also
one of the Notes guaranteed by a certain Guaranty of Payment, dated January 1, 2015, from
Yedidia Berzon, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret, Inc.

2.      **Fees and Payments.**

2.1     Borrower promises to pay fees (the **"Fees"**) on the outstanding
Principal, as follows: (i) 1.4% of any portion of the Principal that is repaid within 3 Business Days
of the date that the Advance of such Principal is made to Borrower (the **"Advance Date"**); (ii)
_1_% of any portion of the Principal that is repaid 4 Business Days after the Advance Date; (iii)
_2_% of any portion of the Principal that is repaid 5 Business Days after the Advance Date; (iv)
_3_% of any portion of the Principal that is repaid 6 Business Days after the Advance Date; and
(v) 1.9% of any portion of the Principal that is repaid 7 Business Days after the Advance Date.
The Principal and Fees thereon shall be paid in full by Borrower to Lender no later than 7
Business Days after the Advance Date (the **"Due Date"**).

2.2     Fees and other payments of the Obligations shall be paid, when due, by
the application of funds advanced under the Revolving Facility in accordance with the provisions
of the Credit Agreement. Any payments of Principal, Fees or other amounts on or payments
under this Revolving Note not paid automatically through Advances shall be paid to Lender only
by wire transfer (or such other method mutually agreed to between Borrower and Lender) on or
prior to the date when due, without offset or counterclaim, in Dollars in immediately available
funds. It is agreed by Borrower that time is of the essence hereof.

3.    Late Fee; Default Rate.

    3.1    In the event that any Obligation due hereunder or under any other Loan Document is not received by Lender within three (3) Business Days of the Due Date, or such other applicable due date, then Borrower shall pay to Lender a late charge equal to fifteen percent (15%) of the amount of such payment not timely made.

    3.2    Without in any way limiting the provisions of Section 3.1 above, upon the occurrence of an Event of Default and during the continuation thereof, Borrower shall pay to Lender a default rate of interest with respect to any outstanding Obligations of 1.5% per month or at the highest rate permitted by law, whichever rate is lower.

    4.    **Exercise of Rights.**  Lender shall have the right in its sole discretion to determine which rights, powers or remedies Lender may at any time pursue, relinquish, subordinate or modify or to take any other action with respect thereto, and such determination will not in any way modify or affect any of Lender's rights, powers or remedies hereunder or under any of the Loan Documents, under applicable law or at equity.  The rights and remedies of Lender described herein are cumulative and are not alternative to or exclusive of any other rights or remedies which Lender otherwise may have by contract or at law or in equity, and the partial or complete exercise of any right or remedy shall not preclude any other further exercise of such or any other right or remedy.

    5.    **Lawful Limits.**  This Revolving Note is expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration or otherwise, shall any interest, fees and other charges paid or agreed to be paid to Lender for the use, forbearance or detention of money hereunder exceed the maximum rate permissible under applicable law which a court or arbitrator(s) of competent jurisdiction shall, in a final determination, deem applicable hereto. If, due to any circumstance whatsoever, fulfillment of any provision hereof, at the time performance of such provision shall be due, shall exceed any such limit, then, the obligation to be so fulfilled shall be reduced to such lawful limit, and, if Lender shall have received interest, fees or any other charges of any kind which might be deemed to be interest under applicable law in excess of the maximum lawful rate, then such excess shall be applied first to any unpaid fees and charges hereunder, then to the unpaid balance of Principal owed by Borrower hereunder, and if the then remaining excess interest is greater than the previously unpaid balance of Principal, Lender shall promptly refund such excess amount to Borrower and the provisions hereof shall be deemed amended to provide for such permissible rate. The terms and provisions of this Section 5 shall control to the extent any other provision of any Loan Document is inconsistent herewith.

    IN WITNESS WHEREOF, Borrower has executed this Revolving Note as of the date set forth above.

YEB EDUCATIONAL PROGRAMS INC.

By: _____
Yedidia Berzon, CEO

2

**Exhibit C**

**Guaranty**

## GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY OF PAYMENT AND PERFORMANCE** (this "**Guaranty**") is made as of the ___ day of January, 2015, by YEDIDIA BERZON, residing at _____, Israel, YESHIVAT SHAREI MEVASERET ZION, an Israeli charitable foundation with offices at _____, and AMERICAN FRIENDS OF SHAREI MEVASERET, INC., a _____ 501(c)(3) corporation with offices at _____ (collectively, the "**Guarantors**"), in favor of BITACH, LLC, a Delaware limited liability company with an office at 3545 Cruse Road, Lawrenceville, Georgia 30044 (the "**Lender**").

### RECITALS

A.     Lender has agreed to make available to **YEB EDUCATIONAL PROGRAMS INC.**, a _____ 501(c)(3) non-profit corporation with an address at _____ ("**Borrower**"), a revolving credit facility (the "**Revolving Facility**") in a maximum aggregate principal amount at any time outstanding of up to One Hundred Thousand Dollars (the "**Maximum Revolving Loan Amount**"), in accordance with a Revolving Credit Agreement, dated simultaneously herewith, between Borrower and Lender (the "**Credit Agreement**"), in which advances to Borrower under the Revolving Facility ("**Advances**") are being made from time to time as evidenced by Revolving Note(s) executed by Borrower from time to time in favor of Lender (the "**Notes**").

B.     One of the conditions of the Revolving Facility and the Advances is that Guarantors jointly and severally guarantee the obligations of Borrower as set forth in the Credit Agreement and Notes (the "**Borrower Agreements**"), now existing or hereafter incurred, owing to Lender thereunder, including, without limitation, the payment of all amounts due thereunder.  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Credit Agreement.

### AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing Recitals, and in order to induce Lender to make the Advances under the Revolving Facility, the Guarantors jointly and severally agree and covenant with Lender and represent and warrant to Lender as follows:

1.     **Guarantee of Loan Obligations.**  Guarantors, as primary obligors and not as a surety only, hereby jointly and severally irrevocably and unconditionally guarantee to Lender (a) the due, regular, and punctual payment and performance of the Obligations; and (b) all reasonable costs, reasonable attorneys' fees, and expenses that may be incurred by Lender by reason of a default by Borrower, including reasonable fees and expenses in any appellate or bankruptcy proceedings.

Upon any default of the Note, Guarantors jointly and severally unconditionally promise to pay to Lender such amounts as are necessary to cure the default or, at the option of Lender, the outstanding Obligations.

This Guaranty is unconditional except as expressly set forth herein, and Guarantors agree that Lender, upon the occurrence of a default or an event of default pursuant to any

Borrower Agreement, shall not be required to assert any claim or cause of action against Borrower before asserting any claim or cause of action against any Guarantor hereunder. Each Guarantor agrees that he or it is directly liable to Lender, that the obligations of such Guarantor hereunder are independent of the obligations of Borrower, and that a separate action may be brought against any or all of the Guarantors whether such action is brought against Borrower or any other Guarantor or whether Borrower or such other Guarantor is joined in such action.

Notice of any Event of Default by Borrower is hereby waived by each Guarantor. This Guaranty shall not be affected, modified, or impaired by the voluntary or involuntary liquidation, dissolution, sale, or other disposition of all or substantially all of the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangements, composition with creditors or readjustment of, or other similar proceedings affecting Borrower or any Guarantor, or any of the assets belonging to Borrower or any Guarantor, nor shall this Guaranty be affected, modified, or impaired by the invalidity of any Borrower Agreement.

Without notice to any Guarantor, without the consent of any Guarantor, and without affecting or limiting any Guarantor's liability hereunder, Lender may: (a) grant Borrower extensions of time for payment of the Obligations or any part hereof; (b) renew any of the Obligations; (c) compromise, settle, release, or terminate any or all of the obligations, covenants, or agreements of Borrower under the Borrower Agreement(s); and (d) with Borrower's consent, modify or amend any obligation, covenant, or agreement of Borrower as set forth in any of the Borrower Agreements (and such amendments shall nevertheless be binding upon Guarantors).

2.   **Payment/Performance of Loan Obligations.**   Each Guarantor jointly and severally covenants and agrees that so long as the Obligations are outstanding, he or it shall duly and punctually pay or cause to be paid or performed all Obligations in accordance with the terms of the Borrower Agreements.

3.   **Event of Default.**   Upon any Guarantor's failure to make any payment required by this Guaranty within three (3) days of the date such payment is due, the same shall constitute an "Event of Default" hereunder (without in any way limiting the definition or applicability of other "Events of Default" as set forth in the Borrowing Agreements, which shall also be applicable to this Guaranty).

4.   **Successors and Assigns; Severability.**   This Guaranty shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, legal representatives, successors, and assigns. In the event that any provision hereof is deemed to be invalid by reason of the operation of any law or by reason of the interpretation placed thereon by any court, this Guaranty shall be construed as not containing such provisions, and the invalidity of such provisions shall not affect other provisions hereof which are otherwise lawful and valid and shall remain in full force and effect.

5.   **Notices; Waivers.**   Any notice or other communication required or permitted to be given pursuant to this Guaranty or by applicable law shall made in accordance with the terms of the Credit Agreement. The failure by Lender at any time or times hereafter to require strict performance by a Guarantor of any of the provisions, warranties, terms, and conditions

contained herein shall not waive, affect, or diminish any right of Lender hereafter to demand strict compliance or performance therewith, and any waiver of any default shall not waive or affect any other default, whether prior or subsequent thereto and whether of the same or a different type. None of the warranties, conditions, provisions, and terms contained in this Guaranty shall be deemed to have been waived by any act or knowledge of Lender, but only by an instrument in writing, signed by Lender, and directed to each Guarantor specifying such waiver.

6.      **Expenses.** If, at any time or times hereafter, Lender employs counsel to advise or provide other representation with respect to this Guaranty or any of the Borrower Agreements, or to commence, defend, or intervene, file a petition, complaint, answer, motion, or any other pleading or to take any other action in or with respect to any suit or proceeding relating to this Guaranty or any of the Borrower Agreements, or to represent Lender in any litigation with respect to the Guaranty or to enforce any rights of Lender or obligations of any Guarantor by virtue of this Guaranty or any of the Borrower Agreements, then in any such events, all of the reasonable attorneys' fees incurred arising from such services, including fees in any appellate or bankruptcy proceedings, and any other reasonable expenses, costs, and charges relating to this Guaranty, the Borrower or the Obligations shall constitute joint and several Obligations of each Guarantor payable on demand.

7.      **Entire Agreement.** This Guaranty (and the Borrowing Agreements) constitutes the entire agreement and supersedes all prior agreements and understandings, both oral and written, among the parties with respect to the subject matter hereof.

8.      **Set-off.** Each Guarantor agrees that such Guarantor shall make no claim or setoff, defense, recoupment or counterclaim of any sort whatsoever, nor shall such Guarantor seek to impair, limit or defeat in any way his or its obligations hereunder. Each Guarantor hereby waives any right to such a claim in limitation of his or its obligations hereunder.

9.      GOVERNING LAW; ARBITRATION; CONSENT TO JURISDICTION. TO INDUCE LENDER TO MAKE THE ADVANCES, EACH GUARANTOR AGREES THAT ALL ACTIONS ARISING DIRECTLY OR INDIRECTLY AS A RESULT OR IN CONSEQUENCE OF THE GUARANTY OR ANY OTHER AGREEMENT WITH LENDER SHALL BE SETTLED BY ARBITRATION BY AN ORTHODOX RABBINICAL COURT SELECTED BY BORROWER AND LENDER IN JERUSALEM, ISRAEL (THE "BET DIN"), IN ACCORDANCE WITH THE RULES SET FORTH BY THE BET DIN. SUCH DECISION SHALL BE FINAL AND BINDING UPON SUCH GUARANTOR. EACH GUARANTOR HEREBY AGREES TO THE SELECTION OF THE BET DIN OF RABBI MOSHE URI EISENSTEIN IN GIVAT SHAUL, JERUSALEM. IF RABBI EISENSTEIN OR HIS BET DIN IS NOT WILLING AND AVAILABLE TO SERVE AS SUCH, THEN GUARANTORS HEREBY AGREES THAT THEY WILL JOINTLY, ON THE ONE HAND, SELECT ONE RABBI ("GUARANTORS' RABBI") AND LENDER, ON THE OTHER HAND, WILL SELECT ANOTHER RABBI ("LENDER'S RABBI") AND GUARANTORS' RABBI AND LENDER'S RABBI WILL SELECT A THIRD RABBI, AND ALL SUCH RABBIS WILL SERVE JOINTLY AS THE ARBITRATORS. EACH GUARANTOR HEREBY CONSENTS TO THE JURISDICTION OF THE COURTS IN JERUSALEM, ISRAEL, FOR ALL PURPOSES IN CONNECTION WITH ARBITRATION, INCLUDING THE ENTRY OF JUDGMENT ON ANY AWARD (AND SUCH JUDGMENT MAY BE ENTERED IN ANY OTHER COURT HAVING COMPETENT JURISDICTION THEREOF). THE ARBITRATOR(S) SHALL HAVE NO POWER TO ALTER OR MODIFY ANY EXPRESS PROVISION OF THIS GUARANTY OR TO RENDER AN AWARD WHICH HAS THE EFFECT OF ALTERING OR MODIFYING ANY EXPRESS PROVISION

HEREOF.   EACH GUARANTOR HEREBY WAIVES ANY OBJECTION BASED ON FORUM NONCONVENIENS, AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS, AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY HAND OR BY COURIER OR BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE UNDERSIGNED AT THE RESPECTIVE ADDRESSES HEREINABOVE SET FORTH.  IN THE EVENT THAT LENDER DEEMS EMERGENCY RELIEF NECESSARY, IT MAY APPLY TO ANY COURT OF COMPETENT JURISDICTION FOR SUCH RELIEF WITHOUT WAIVER OF THE FOREGOING ARBITRATION PROVISION.

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty as of the day and year first above written.

_____
Yedidia Berzon (personally)

YESHIVAT SHAREI MEVASERET ZION
_____
By: Yedidia Berzon, CEO

AMERICAN FRIENDS OF SHAREI MEVASERET, INC.
_____
By: Yedidia Berzon, CEO

**Exhibit D**

**Record of Advances**



## Mevaseret Yeshiva default docs

| Drawer # | Date | Location | Initial Credit Amount | Live Balance |
|---|---|---|---|---|
| 610 | September 27th 2015 | Friends Shaare Mevaseret INC YEB Educational Programs, INC | $25,010.18 | $25,010.18 |
| 609 | September 25th 2015 | Friends Shaare Mevaseret INC YEB Educational Programs, INC | $35,000.00 | $35,000.00 |
| 602 | September 22nd 2015 | Friends Shaare Mevaseret INC YEB Educational Programs, INC | $34,800.00 | $34,800.00 |
| 590 | September 18th 2015 | Friends Shaare Mevaseret INC YEB Educational Programs, INC | $35,101.31 | $30,140.46 |
| | | | | $124,950.64 |

**Exhibit E**

**Notices of Default**



November 2, 2015

**RE: Default and Demand for Payment of Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.**

Dear Mr Yedidia Berzon:
Nachal Raziel 4/4
Bet Shemesh, Israel

As you know and as we have discussed, YEB as the principal obligor, and Yedidia, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret as Guarantors, are all in default of the Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.

The amounts that are currently due to us, and that each of you are independently and **personally** liable for pursuant to these agreements, are as follows:

1. The aggregate principal amount of the funds advanced to you —**$127,582.15.**

2. **1.9%** Fee with respect to the Loan — **$2,424.06** (per Section 2.1 of the Revolving Notes).

3. An automatic late charge of 15% of the total amount outstanding — **$19,137.32** (See Section 1.10(a) of the Revolving Credit Agreement; Section 3.1 of the Revolving Notes; and Sections 1-3 of the Guaranty.)

4. As long as you are continuing to be in default, you are incurring additional significant charges, as well as out-of-pocket costs of collection, as follows:

      (a) An ongoing monthly charge of 1.5% with respect to all outstanding obligations — currently, such charge is approximately **$2,200 per month,** but these charges will increase as your financial obligations increase during any period of default. (See Section 1.10(b) of the Revolving Credit Agreement; Section 3.2 of the Revolving Notes; and Sections 1-3 of the Guaranty.)



(b) Any sums expended by Bitach as a result of your default, including all costs and expenses (attorneys' fees, etc.) arising from any effort to collect payment on your obligations. (See Sections 1.8 and 7.6 of the Revolving Credit Agreement; Section 1(ii) of the Revolving Notes; and Sections 1-3 of the Guaranty.)

We strongly caution you to honor our agreements, and immediately pay the amounts due to us -– as we emphasized in the contracts, and when we advanced you the funds, **time is of the essence** in our business.  Otherwise, we will vigorously pursue all remedies under the contracts and under the law against each of you.

Respectfully,

Ezra Zucker
CEO

CC: YEB Educational Programs, Inc.
    Yeshiva Sharei Mevaseret Zion Israel
    American Friends of Sharei Mevaseret, Inc.
    Yedidia Berzon, Individually



November 2, 2015

**RE: Default and Demand for Payment of Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.**

YEB Educational Programs Inc.:
Attn: Yehuda and Yedidya Berzon
550 Broad Street, Suite 1212
Newark, New Jersey 07102

As you know and as we have discussed, YEB as the principal obligor, and Yedidia, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret as Guarantors, are all in default of the Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.

The amounts that are currently due to us, and that each of you are independently and **personally** liable for pursuant to these agreements, are as follows:

1. The aggregate principal amount of the funds advanced to you —**$127,582.15.**

2. 1.9% Fee with respect to the Loan — **$2,424.06** (per Section 2.1 of the Revolving Notes).

3. An automatic late charge of 15% of the total amount outstanding — **$19,137.32** (See Section 1.10(a) of the Revolving Credit Agreement; Section 3.1 of the Revolving Notes; and Sections 1-3 of the Guaranty.)

4. As long as you are continuing to be in default, you are incurring additional significant charges, as well as out-of-pocket costs of collection, as follows:

(a) An ongoing monthly charge of 1.5% with respect to all outstanding obligations — currently, such charge is approximately **$2,200 per month**, but these charges will increase as your financial obligations increase during any period of default. (See Section 1.10(b) of the Revolving Credit Agreement; Section 3.2 of the Revolving Notes; and Sections 1-3 of the Guaranty.)



(b) Any sums expended by Bitach as a result of your default, including all costs and expenses (attorneys' fees, etc.) arising from any effort to collect payment on your obligations. (See Sections 1.8 and 7.6 of the Revolving Credit Agreement; Section 1(ii) of the Revolving Notes; and Sections 1-3 of the Guaranty.)

We strongly caution you to honor our agreements, and immediately pay the amounts due to us — as we emphasized in the contracts, and when we advanced you the funds, **time is of the essence** in our business.  Otherwise, we will vigorously pursue all remedies under the contracts and under the law against each of you.

Respectfully,

Ezra Zucker
CEO

CC: YEB Educational Programs, Inc.
    Yeshiva Sharei Mevaseret Zion Israel
    American Friends of Sharei Mevaseret, Inc.
    Yedidia Berzon, Individually



November 6, 2015

**RE: Default and Demand for Payment of Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.**

American Friends of Sharei Mevaseret
Attn: Yehudah and Yedidiya Berzon
9 Barbara Lane
Monsey, NY 10952

As you know and as we have discussed, YEB as the principal obligor, and Yedidia, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret as Guarantors, are all in default of the Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.

The amounts that are currently due to us, and that each of you are independently and **personally** liable for pursuant to these agreements, are as follows:

1. The aggregate principal amount of the funds advanced to you —**$127,582.15.**

2. 1.9% Fee with respect to the Loan — **$2,424.06** (per Section 2.1 of the Revolving Notes).

3. An automatic late charge of 15% of the total amount outstanding — **$19,137.32** (See Section 1.10(a) of the Revolving Credit Agreement; Section 3.1 of the Revolving Notes; and Sections 1-3 of the Guaranty.)

4. As long as you are continuing to be in default, you are incurring additional significant charges, as well as out-of-pocket costs of collection, as follows:

   (a) An ongoing monthly charge of 1.5% with respect to all outstanding obligations — currently, such charge is approximately **$2,200 per month**, but these charges will increase as your financial obligations increase during any period of default. (See Section 1.10(b) of the Revolving Credit Agreement; Section 3.2 of the Revolving Notes; and Sections 1-3 of the Guaranty.)



(b) Any sums expended by Bitach as a result of your default, including all costs and expenses (attorneys' fees, etc.) arising from any effort to collect payment on your obligations. (See Sections 1.8 and 7.6 of the Revolving Credit Agreement; Section 1(ii) of the Revolving Notes; and Sections 1-3 of the Guaranty.)

We strongly caution you to honor our agreements, and immediately pay the amounts due to us — as we emphasized in the contracts, and when we advanced you the funds, **time is of the essence** in our business.  Otherwise, we will vigorously pursue all remedies under the contracts and under the law against each of you.

Respectfully,

Ezra Zucker
CEO

CC: YEB Educational Programs, Inc.
    Yeshiva Sharei Mevaseret Zion Israel
    American Friends of Sharei Mevaseret, Inc.
    Yedidia Berzon, Individually



November 6, 2015

**RE: Default and Demand for Payment of Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.**

American Friends of Sharei Mevaseret
C/O: Treetop Development
Attn: Yehudah and Yedidiya Berzon
500 Frank W Burr Blvd #47
Teaneck, NJ  07666

As you know and as we have discussed, YEB as the principal obligor, and Yedidia, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret as Guarantors, are all in default of the Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.

The amounts that are currently due to us, and that each of you are independently and **personally** liable for pursuant to these agreements, are as follows:

1. The aggregate principal amount of the funds advanced to you —**$127,582.15.**

2. 1.9% Fee with respect to the Loan — **$2,424.06** (per Section 2.1 of the Revolving Notes).

3. An automatic late charge of 15% of the total amount outstanding — **$19,137.32** (See Section 1.10(a) of the Revolving Credit Agreement; Section 3.1 of the Revolving Notes; and Sections 1-3 of the Guaranty.)

4. As long as you are continuing to be in default, you are incurring additional significant charges, as well as out-of-pocket costs of collection, as follows:

(a) An ongoing monthly charge of 1.5% with respect to all outstanding obligations — currently, such charge is approximately **$2,200 per month**, but these charges will increase as your financial obligations increase during any period of default. (See Section 1.10(b) of the Revolving Credit Agreement; Section 3.2 of the Revolving Notes; and Sections 1-3 of the Guaranty.)



  (b) Any sums expended by Bitach as a result of your default, including all costs and expenses (attorneys' fees, etc.) arising from any effort to collect payment on your obligations. (See Sections 1.8 and 7.6 of the Revolving Credit Agreement; Section 1(ii) of the Revolving Notes; and Sections 1-3 of the Guaranty.)

We strongly caution you to honor our agreements, and immediately pay the amounts due to us — as we emphasized in the contracts, and when we advanced you the funds, **time is of the essence** in our business.  Otherwise, we will vigorously pursue all remedies under the contracts and under the law against each of you.

Respectfully,

Ezra Zucker
CEO

CC: YEB Educational Programs, Inc.
  Yeshiva Sharei Mevaseret Zion Israel
  American Friends of Sharei Mevaseret, Inc.
  Yedidia Berzon, Individually



November 6, 2015

**RE: Default and Demand for Payment of Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.**

YEB Educational Programs Inc.:
C/O VCorp Services
Attn Isser Zeilingold
25 Robert Pitt Drive Suite 204
Monsey, NY 10952

As you know and as we have discussed, YEB as the principal obligor, and Yedidia, Yeshivat Sharei Mevaseret Zion and American Friends of Sharei Mevaseret as Guarantors, are all in default of the Revolving Credit Agreement, Revolving Notes and Guarantee that you have entered into with, and in favor of, Bitach.

The amounts that are currently due to us, and that each of you are independently and **personally** liable for pursuant to these agreements, are as follows:

1. The aggregate principal amount of the funds advanced to you —**$127,582.15.**

2. 1.9% Fee with respect to the Loan — **$2,424.06** (per Section 2.1 of the Revolving Notes).

3. An automatic late charge of 15% of the total amount outstanding — **$19,137.32** (See Section 1.10(a) of the Revolving Credit Agreement; Section 3.1 of the Revolving Notes; and Sections 1-3 of the Guaranty.)

4. As long as you are continuing to be in default, you are incurring additional significant charges, as well as out-of-pocket costs of collection, as follows:

(a) An ongoing monthly charge of 1.5% with respect to all outstanding obligations — currently, such charge is approximately **$2,200 per month**, but these charges will increase as your financial obligations increase during any period of default. (See Section 1.10(b) of the Revolving Credit Agreement; Section 3.2 of the Revolving Notes; and Sections 1-3 of the Guaranty.)



(b) Any sums expended by Bitach as a result of your default, including all costs and expenses (attorneys' fees, etc.) arising from any effort to collect payment on your obligations. (See Sections 1.8 and 7.6 of the Revolving Credit Agreement; Section 1(ii) of the Revolving Notes; and Sections 1-3 of the Guaranty.)

We strongly caution you to honor our agreements, and immediately pay the amounts due to us — as we emphasized in the contracts, and when we advanced you the funds, **time is of the essence** in our business.  Otherwise, we will vigorously pursue all remedies under the contracts and under the law against each of you.

Respectfully,

Ezra Zucker
CEO

CC: YEB Educational Programs, Inc.
    Yeshiva Sharei Mevaseret Zion Israel
    American Friends of Sharei Mevaseret, Inc.
    Yedidia Berzon, Individually

<u>**Appendix XII-B1**</u>



| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|

### CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE: ☐ CK  ☐ CG  ☐ CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| 1. ATTORNEY / PRO SE NAME<br>Samuel Cahn | 2. TELEPHONE NUMBER<br>(862) 801-2246 | 3. COUNTY OF VENUE<br>Essex   L 8401-15 |
|---|---|---|

4. FIRM NAME (if applicable)
Law Office of Samuel Cahn

5. DOCKET NUMBER (when available)

6. OFFICE ADDRESS
13 Avon Road
Springfield, NJ 07081

7. DOCUMENT TYPE
Complaint

8. JURY DEMAND  ☐ YES  ■ No

9. NAME OF PARTY (e.g., John Doe, Plaintiff)
Bitach, LLC - Plaintiff

10. CAPTION
Bitach, LLC v. YEB Educational Programs Inc., and American Friends of Sharei Mevaseret, Inc. a.k.a. Friends Shaare Mevaseret Inc.

11. CASE TYPE NUMBER
(See reverse side for listing)
511

12. HURRICANE SANDY RELATED?
☐ YES  ■ NO

13. IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO
IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

14. RELATED CASES PENDING?
■ YES  ☐ No

15. IF YES, LIST DOCKET NUMBERS
Related cases pending abroad.

16. DO YOU ANTICIPATE ADDING ANY PARTIES
(arising out of same transaction or occurrence)?
☐ Yes  ■ No

17. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)
☐ NONE
■ UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

18. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?
■ Yes  ☐ No

IF YES, IS THAT RELATIONSHIP:
☐ EMPLOYER/EMPLOYEE    ☐ FRIEND/NEIGHBOR    ☐ OTHER (explain)
☐ FAMILIAL    ■ BUSINESS

19. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ Yes  ■ No

20. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION
This is an action to collect on a defaulted note. The defendants are the borrower and a guarantor. Plaintiffs may move against foreign guarantors in their home country.

21. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?
☐ Yes  ■ No

IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION

22. WILL AN INTERPRETER BE NEEDED?
☐ Yes  ■ No

IF YES, FOR WHAT LANGUAGE?

23. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

24. ATTORNEY SIGNATURE:

Effective 05-04-2015, CN 10517_ps - English

Page 4 of 5

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK                     NJ 07102

COURT TELEPHONE NO. (973) 693-5529
COURT HOURS   8:30 AM - 4:30 PM

                                          TRACK ASSIGNMENT NOTICE

                    DATE:      DECEMBER 07, 2015
                    RE:        BITACH LLC VS YEB EDUCATIONAL PROGRAMS INC
                    DOCKET:    ESX L -008401 15

. THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

DISCOVERY IS    150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON MICHAEL J. NELSON

AT:  (973) 776-9300.              CONTACT TEAM     001

    IF YOU HAVE ANY QUESTIONS,

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
    CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
    WITH R.4:5A-2.

                    ATTENTION:
                                        BITACH LLC

                                        00000

JDMJB3

## COUNTY LAWYER REFERRAL AND LEGAL SERVICES OFFICES

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing 1201
Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0032
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake First Fl.,
Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4542
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice ,1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0620
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., P.O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 453-7000
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-5360
LEGAL SERVICES
(856) 853-4359

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-3433
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
71 Monument Park P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-6089
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 345-4585
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market Street, P.O. Box 29
Salem, NJ 08079
LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000,
40 North Bridge Street
Somerville, N.J. 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House,
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 354-5984
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office, Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 387-1835
LEGAL SERVICES
(908) 475-2010